
E-FILED
Wednesday, 12 November, 2008  02:41:14 PM
Clerk, U.S. District Court, ILCD



E-FILED
Wednesday, 12 November, 2008  02:41:14 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOHNNIE HENDERSON,
    Plaintiff,

vs.                                              08-1217

ROGER WALKER, et. al.,
    Defendants.

## CASE MANAGEMENT AND MERIT REVIEW ORDER

This cause is before the court for consideration of the plaintiff's motion for leave to file an amended complaint [d/e 15] and motion for leave to file documents under seal. [d/e 17].

### I. BACKGROUND

On September 18, 2008, the court dismissed the plaintiff's original complaint. *See* September 18, 2008 Text Order. The court found that the plaintiff had failed to provide the defendants with proper notice of his intended claims. The plaintiff made only general allegations and named only one defendant in the body of his complaint. The court gave the plaintiff specific instructions to follow. The plaintiff was advised that he must state why he believed each defendant had violated his constitutional rights. In addition, the plaintiff had to state which correctional facility the incidents occurred at and roughly what time period was involved. September 18, 2008 Text Order. The plaintiff was also admonished that he "must follow the court's instructions or his case may be dismissed." September 18, 2008 Text Order.

The plaintiff has now filed an amended complaint and his motion for leave to file this document is granted. [d/e 15]

### II. MERIT REVIEW

The court will conduct a merit review of the amended complaint. The court is required by 28 U.S.C. §1915A to "screen" the plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

The plaintiff, Johnnie Henderson, filed his amended complaint pursuant to 42 U.S.C. §1983 against five defendants including Illinois Department of Corrections (herein IDOC) Director Roger Walker, IDOC transfer coordinator Sandra Funk, Pontiac Correctional Center

1

Warden Mathy, Pontiac Correctional Center's Gang Intelligence Unit and Stateville Correctional Center's Gang Intelligence Unit. The plaintiff's complaint concerns a long-standing conflict with another inmate and rival gangs.

The plaintiff says while he was at Menard Correctional Center in 2003, an inmate (herein Inmate S) spread rumors that he had a sexual relationship with the plaintiff. This caused problems between the gang Inmate S was affiliated with and the gang the plaintiff was affiliated with. The plaintiff claims he received pressure to take action against Inmate S. Instead, he chose to go into protective custody and was transferred to Pontiac Correctional Center in 2004.

The plaintiff claims the problems started all over again at Pontiac. The Gang Intelligence Unit began investigating the problem after a threatening letter was confiscated. The plaintiff says as a result, the Gang Intelligence Unit told gang members that the plaintiff had signed a statement against another inmate causing the inmate to be transferred to Tamms Correctional Center. The plaintiff says this rumor endangered his life within the prison. He complained about the situation, but no action was taken.

In 2006, the plaintiff says he wrote to IDOC Director Roger Walker and asked to be transferred to a different prison. The plaintiff says Walker simply sent a letter to the Pontiac Correctional Center Warden asking them to investigate.

In September or October of 2006, the plaintiff says he was kicked out of protective custody and transferred to Stateville Correctional Center. The plaintiff says gang members arranged for him to be placed in the same cell with Inmate S. The plaintiff claims Stateville's Gang Intelligence Unit "began to threaten to kick me out of protective custody at Stateville if I didn't get (Inmate S)." (Amended Comp., p. 4).

The plaintiff says he filed a lawsuit in the Northern District of Illinois, but was soon transferred back to Pontiac Correctional Center. The plaintiff says he was told he would be placed in a single cell in protective custody, so he asked to dismiss his lawsuit and the court complied. The plaintiff says when he arrived at Pontiac, he instead was sent to segregation and received a disciplinary ticket for a letter he wrote to his uncle.

The plaintiff has attached a copy of the disciplinary report. In his letter, the plaintiff is debating whether he should try to kill Inmate S. (Amended Comp., Ex B). The plaintiff stated in his letter that "one of us is going to die" and "I have to decide what is best for me. Do I want to go home or do I want to say here the rest of my life." (Amended Comp., Ex. B)

The plaintiff says when he was at Pontiac Correctional Center, he contacted Defendant Sandra Funk and told her about the "problem." (Amended Comp, p. 5)  It's not entirely clear from the complaint what "problem" the plaintiff is referring to. The plaintiff says Funk was deliberately indifferent to his safety, but acknowledges that she replied with a memorandum.

2

Fortunately, the plaintiff has provided a copy of the memorandum which helps explain the plaintiff's concerns.

In the memorandum, Defendant Funk said she had received the plaintiff's letter requesting not to be transferred to a maximum security facility. The plaintiff apparently was approved in May of 2008 for another transfer to Stateville Correctional Center.

> You have expressed concerns over your safety. These concerns will need to be addressed at the facility. By copy of this letter, I am notifying Warden Mathy of your concerns for his review and handling. (Amended Comp., Ex. A).

The plaintiff says the defendant discriminated against him by refusing to send him to a reduced security facility after he told her about his fears. The plaintiff says Defendant Funk told him he still had too much time left to serve, approximately 75 years. The plaintiff claims there are other inmates at reduced security facilities serving natural life.

The plaintiff says he then contacted Defendant Mathy and asked not to be transferred to Stateville Correctional Center, but his concerns were ignored.

The plaintiff says on August 31, 2008, he refused to pack any of his property for transfer. On the day of his transfer, September 3, 2008, the plaintiff says Defendant Mathy ordered officers to forcefully remove the plaintiff from his cell. The plaintiff says Defendant Mathy ultimately deprived him of his property without due process. The plaintiff says while all the property in his cell was transferred to his new location, he did not receive any of his property that was in storage. The plaintiff says he was told his property may have been stolen, lost or destroyed. (Amended Comp., p. 7)

The plaintiff says the Gang Intelligence Units at both Pontiac Correctional Center and Stateville Correctional Center endangered his safety by arranging for him to be in a cell with Inmate S. The court notes that the documents the plaintiff has attached to his complaint do not seem to indicate that the two were ever housed in the same cell. The plaintiff also claims the gang units spread rumors that the plaintiff was responsible for sending a gang member to Tamms Correctional Center. The plaintiff says once he arrived at Stateville Correctional Center, the Gang Intelligence Unit there began to retaliate against the plaintiff for filing this complaint by shaking down his cell and filing a disciplinary report against him.

The plaintiff filed this complaint on August 29, 2008. On September 4, 2008, a disciplinary report indicates that officers discovered an electrical conduit pipe had been removed from the plaintiff's cell and the two foot piece of metal was attached to the bottom bunk of plaintiff's cell. (Amended Comp., Ex. C). In his complaint, the plaintiff says he told the officers he had never seen the pipe before. However, he says officers threatened to remove him from

protective custody if he did not tell them about the pipe. The plaintiff says he then "admitted" that he had the pipe. (Amended Comp., p. 8) The disciplinary report states that the plaintiff claimed other inmates had told him that Inmate S was going to be moved into his cell "so they could settle the score once and for all." (Amended Comp., Ex. C). The plaintiff says a little while later, the inmates told him it would not happen. While the plaintiff feared he would be housed with Inmate S, it does not appear the two inmates ever actually became cell mates.

There are several problems with the plaintiff's complaint. First, the plaintiff filed his complaint on August 29, 2008. State law governs the limitations period and tolling rules for a §1983 action. *Heard v. Sheahan*, 253 F.3d 316, 317-318 (2001) The statute of limitations on civil rights action is two years in Illinois. *Gonzalez v. Entress*, 133 F.3d 551, 554 (7th Cir.1998). The statute of limitations period begins at the time "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). Any claims concerning the conduct alleged prior to August 29, 2006 are barred by the statute of limitations period.

Second, venue for federal civil rights actions brought under 42 U.S.C. § 1983 is governed by 28 U.S.C. § 1391(b). According to that statute, such actions may be brought only in (1) the judicial district where any defendant resides (if all defendants reside in the same State), (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

The plaintiff's claims involving his treatment at Stateville Correctional Center should not be brought before this court. Stateville Correctional Center is in Will County which is situated in the federal judicial district for the Northern District of Illinois. If venue is improper the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. §1406 (a). The court cannot transfer the plaintiff's case to the Northern District because he has chosen to combine claims that involve both districts in his complaint. Therefore, the court will dismiss any claims concerning his treatment at Stateville Correctional Center. The plaintiff may chose to file a separate lawsuit concerning these claims in the Northern District of Illinois.

Third, the plaintiff's claims concerning his missing property do not state a violation of his constitutional rights. A due process claim requires the plaintiff demonstrate that he was deprived of a constitutionally protected life, liberty or property interest without sufficient procedural safeguards. *Siebert v Severino,* 256 F.3d 648, 659 (7th Cir. 2001). When property is taken or destroyed due to the unauthorized act of a state employee, there can be no claim for violation of due process if an adequate post-deprivation remedy exists under state law. *Hudson v Palmer,* 486 U.S. 517, 531-536 (1984); *Parratt v. Taylor,* 451 U.S. 527, 535-544 (1981). The plaintiff has a viable remedy in the Illinois Court of Claims for any property taken and subsequently lost or destroyed prior to the plaintiff's release from prison.

Fourth, the plaintiff has failed to state a failure to protect claim in violation of the Eighth Amendment. "Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners." *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). Failure to provide this protection violates the Eighth Amendment only if "deliberate indifference by prison officials [to the prisoner's welfare] effectively condoms the attack by allowing it to happen." *Haley v Gross*, 86 F. 3d 630, 640 (7th Cir. 1996). "Thus, in order to establish the liability of a prison official, a plaintiff must establish that the official knew of the risk (or a high probability of the risk) and did nothing." *Pope v Shafer,* 86 f.3d 90, 92 (7th Cir. 1996). "[A] negligent failure to protect an inmate from harm by fellow inmates is not actionable under the Eighth Amendment or directly under the Due Process Clause." *Lewis El v. O'Leary*, 631 F.Supp. 60, 62 (N.D.Ill.1986)

As previously, stated, the plaintiff cannot file a suit in the Central District of Illinois concerning events that occurred at Stateville Correctional Center. Therefore, the court cannot consider those claims. The plaintiff has the following claims concerning defendants in the Central District of Illinois:

DEFENDANT WALKER: The plaintiff says he wrote a letter to Defendant Walker in mid- 2006 saying he felt unsafe at Pontiac and asking to be transferred to another prison. The plaintiff says the defendant sent the letter back to the Warden at Pontiac Correctional Center and Internal Affairs officers and the Gang Intelligence Unit to investigate his claims

DEFENDANT FUNK: The plaintiff sent a letter to the Transfer Coordinator asking her not to send him to a maximum security facility. The defendant responded to his letter and told him the proper place to address his concerns.

DEFENDANT MATHY: The plaintiff says he contacted this defendant and told him about his concerns of being transferred to the same facility as Inmate S. The plaintiff says he was still transferred.

The plaintiff has failed to articulate a violation of his Eighth Amendment rights. The plaintiff does not allege that he was ever injured by Inmate S or by any other inmate in the Illinois Department of Corrections. Since the complaint contains no allegation of physical injury, the plaintiff has failed to state a claim for damages. *Babcock v. White,* 102 F.3d 267, 270-72 (7th Cir. 1996). The plaintiff does make a claim for injunctive relief. He states that he would like to be transferred to another facility. However, the plaintiff is no longer in a facility within the Central District of Illinois. In addition, the court notes that the allegations in the plaintiff's own complaint demonstrate that Defendants Walker and Funk were not deliberately indifferent to the plaintiff's concerns for his safety.

Finally, the court notes that the greatest threat outlined in the plaintiff's complaint appears to be from the plaintiff himself. The plaintiff claims the statement that started his safety concerns was made five years ago. In that time, the plaintiff does not claim Inmate S communicated any threats to him or that Inmate S had further contact with him. The plaintiff does not claim he was

5

injured in any way. Instead, the plaintiff continues to claim that he might have to take physical action against Inmate S.

The plaintiff's amended complaint fails to state a claim upon which relief can be granted and therefore the court must dismiss the complaint.

### III. OTHER MOTIONS

The court notes the plaintiff has attached a letter to the court to his complaint that has been docketed as a motion to seal. [d/e ] In his letter, the plaintiff asks the court to seal his amended complaint. The plaintiff says he believes he has to kill or seriously hurt the inmate who started rumors against him in 2003. The plaintiff also fears that he may be subject to reprisals or retaliation by gang members or the Gang Intelligence Unit at his institution. The motion is denied.

The plaintiff cannot file a complaint and then ask the court to keep the document sealed from the defendants. In addition, the information in the amended complaint is not new information. The plaintiff stated these same claims in a letter that was previously confiscated by prison officials and resulted in disciplinary action. Finally, the court has dismissed the plaintiff's amended complaint. Therefore, it will not be served upon the defendants.

The plaintiff has also attached documents to his complaint entitled "Order to Cause for Preliminary Injunction" and a Memorandum of Law. (Amended Comp.) The plaintiff appears to be asking the court to set a hearing for ruling on a motion for preliminary injunction. The plaintiff says his problems have lingered since 2003 and the defendants have failed to take any action to protect the plaintiff.

The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits." *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). The plaintiff has not established the basis for entering a preliminary injunction in his memorandum and his complaint does not state a claim upon which relief can be granted. *See Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1014-15 (7th Cir. 1990). The motion for preliminary injunction is denied.

**IT IS THEREFORE ORDERED:**

**1) The plaintiff's motion for leave to file an amended complaint is granted. [d/e 15]**

**2) The plaintiff's motion to file his complaint under seal is denied. [d/e 17]**

**3) The plaintiff's amended complaint is dismissed for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(6) and 28 U.S.C. Section 1915A. This case is closed with**

the parties to bear their own costs.

4) This dismissal shall count as one of the plaintiff's three allotted strikes pursuant to 28 U.S.C. Section 1915(g).  The clerk of the court is directed to record the plaintiff's strike in the three-strike log;

5) The plaintiff must still pay the full docketing fee of $350.00 even though his case has been dismissed.  The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.

6)  The plaintiff is ordered to notify the clerk of the court of a change of address and phone number within seven days of such change.

7) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.

8) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)©.  If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal.

Entered this 12th day of November, 2008.

s\Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE